# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# HELENA DIVISION

JIT GREEN                                                                                          PLAINTIFF

v.                                          No. 2:08CV00005 JLH

GREAT AMERICAN ASSURANCE COMPANY                                        DEFENDANT

## OPINION AND ORDER

Jit Green was injured during an automobile accident with Diane Haskins, who was driving a 1999 Pontiac Sunfire that she was renting or purchasing from Jett Rent to Own pursuant to a Consumer Rental Purchase Agreement. The Consumer Rental Purchase Agreement required Haskins to provide liability insurance meeting the state minimum limits. It is undisputed that Haskins obtained liability insurance with the state minimum limits of $25,000[1] and that this policy was in effect at the time of the accident.

Green sued Haskins and Jett Rent to Own in the Circuit Court of Phillips County, Arkansas. The jury answered interrogatories finding that Diane Haskins was negligent, that Jett Rent to Own was not negligent, and that Green sustained damages in the amount of $100,000. The insurance company that issued the liability policy to Haskins has paid the policy limits of $25,000. Green now seeks to recover the remaining $75,000 from Great American Assurance Company, which issued no insurance policies to Haskins but did issue two policies to Jett Rent to Own. Ark. Code Ann. § 23-89-101 provides that an injured person is subrogated to the right of the insured named in a casualty and may bring a direct action against the insurer if the judgment remains unsatisfied for more than

---

[1] *See* Ark. Code Ann. § 27-19-605 and Ark. Code Ann. § 23-89-403.

thirty days. Green's judgment is against the Estate of Diane Haskins, so he must show that Haskins was insured by a policy issued by Great Assurance.

The first Great Assurance policy issued to Jett Rent to Own is policy No. CAP 5-38-08-61, which included an endorsement providing contingent coverage for leased automobiles. That endorsement provided:

> A. DEFINITIONS
> IN ADDITION TO THE DEFINITIONS IN THIS POLICY, THE FOLLOWING PHRASE AS USED IN THIS ENDORSEMENT IS DEFINED AS FOLLOWS:
>
>> "LEASED AUTO" MEANS AN "AUTO" YOU OWN THAT 1) HAS A GROSS VEHICLE WEIGHT OF 12,500 POUNDS OR LESS; AND 2) IS LEASED BY YOU TO A LESSEE FOR ONE YEAR OR MORE UNDER A WRITTEN LEASE AGREEMENT WHICH REQUIRES THE LESSEE TO PROVIDE PRIMARY INSURANCE FOR YOU.
>
> B. LIABILITY INSURANCE
>
> LIABILITY INSURANCE AND ANY REQUIRED NO-FAULT COVERAGE AND/OR UNINSURED MOTORIST COVERAGE PROVIDED BY THE POLICY FOR A COVERED "AUTO" WHICH IS A "LEASED AUTO" APPLIES SUBJECT TO THE FOLLOWING PROVISIONS:
>
>> 1. THE LESSEE HAS FURNISHED YOU WITH SATISFACTORY EVIDENCE OF INSURANCE TO BE FOLLOWED BY A CERTIFICATE OF INSURANCE AS EVIDENCE THAT SUCH INSURANCE AS REQUIRED UNDER THE LONG TERM LEASE FINANCE AGREEMENT IS IN EFFECT, AND
>>
>> 2. AT THE TIME OF THE "ACCIDENT" THE LESSEE'S INSURANCE IS NOT COLLECTIBLE.
>>
>> 3. FOR YOU, YOUR EMPLOYEES OR AGENTS, THE LIMIT OF LIABILITY FOR THE INSURANCE PROVIDED BY THIS ENDORSEMENT IS THE LESSER OF THE FOLLOWING
>>
>>> A) THE LIMITS OF LIABILITY REQUIRED BY THE LEASE AGREEMENT FOR THAT "LEASED AUTO", OR
>>> B) $100,000 PER PERSON AND $300,000 PER ACCIDENT FOR "BODILY INJURY", $50,000 PER "ACCIDENT" FOR PROPERTY DAMAGE", AND THE MINIMUM LIMITS REQUIRED BY APPLICABLE COMPULSORY FINANCIAL

      RESPONSIBILITY LAW FOR ANY NO-FAULT AND/OR UNINSURED MOTORIST COVERAGE.

  4. FOR THE LESSEE, THE LIMIT OF OUR LIABILITY FOR THE INSURANCE PROVIDED BY THIS ENDORSEMENT IS THE MINIMUM LIMITS REQUIRED BY ANY APPLICABLE COMPULSORY FINANCIAL RESPONSIBILITY LAW. HOWEVER, IF THE LESSEE HAS ANY INSURANCE IN PLACE, NO COVERAGE EXISTS FOR THE LESSEE UNDER THIS POLICY.

  5. COVERAGE UNDER THIS ENDORSEMENT CEASES THE DATE YOU REGAIN CUSTODY OF THE "LEASED AUTO".

C. CONDITIONS

THE FOLLOWING CONDITIONS ARE ADDED TO THOSE CONTAINED WITHIN THE POLICY:

  1. THE COVERAGES OF THIS POLICY ARE UPON THE CONDITION THAT EVERY WRITTEN LEASE AGREEMENT RELATING TO A "LEASED AUTO" CONTAIN THE FOLLOWING:

    A) A PROVISION REQUIRING THE LESSEE TO KEEP EACH "LEASED AUTO" INSURED DURING THE TERM OF THE LEASE, OR ANY EXTENSION OF THE LEASE, FOR LIABILITY INSURANCE. THIS LIABILITY INSURANCE SHALL INCLUDE YOUR INTEREST AS AN INSURED AND PROVIDE LIMITS OF LIABILITY OF NOT LESS THAN $100,000 PER PERSON AND $300,000 PER "ACCIDENT" FOR "BODILY INJURY", AND $50,000 PER "ACCIDENT" FOR "PROPERTY DAMAGE", AND THE MINIMUM LIMITS REQUIRED BY ANY APPLICABLE NO-FAULT AND/OR UNINSURED MOTORIST LAW. SUCH INSURANCE SHALL PROVIDE FOR NOT LESS THAN 10 DAYS WRITTEN NOTICE TO YOU OF ANY CANCELLATION OR NONRENEWAL OF SUCH INSURANCE, OR OF ANY REDUCTION OF ITS APPLICABLE LIMITS BELOW THOSE SPECIFIED ABOVE.

    B) AN AGREEMENT THAT PRIOR TO THE DELIVERY OF ANY "LEASED AUTO" AND PRIOR TO ANY RENEWAL OR SUBSTITUTION OF INSURANCE, THE LESSEE PROVIDE YOU WITH SATISFACTORY EVIDENCE OF INSURANCE AS DESCRIBED ABOVE IN C.1.A TO BE FOLLOWED BY A CERTIFICATE OF INSURANCE AS EVIDENCE THAT SUCH INSURANCE AS IS REQUIRED UNDER THE WRITTEN LEASE AGREEMENT IS IN EFFECT.

      C)    AN AGREEMENT THAT THE LESSEE WILL HOLD YOU HARMLESS AND INDEMNIFY YOU AGAINST ANY CLAIM AND/OR LIABILITY, REGARDLESS OF THE NATURE, INCLUDING ATTORNEY'S FEES AND OTHER EXPENSES FOR THE DEFENSE OF SUCH CLAIM AND/OR LIABILITY IMPOSED LAW, OR OTHERWISE, UPON YOU ARISING OUT OF THE MAINTENANCE, USE, OR OPERATION OF ANY "LEASED AUTO" DURING THE PERIOD THAT "AUTO" IS LEASED FROM YOU.

2.    IN EVERY INSTANCE YOU SHALL OBTAIN PRIOR TO THE DELIVERY OF THE "LEASED AUTO" SATISFACTORY EVIDENCE OF INSURANCE TO BE FOLLOWED BY THE RECEIPT OF A CERTIFICATE OF INSURANCE SHOWING POLICY NUMBER, COVERAGE ON OR BEFORE DATE OF DELIVERY TO THE LESSEE, AND CONTAINING ENDORSEMENTS OR STATEMENTS SHOWING THAT THE POLICY PROVIDES THE LESSEE WITH PRIMARY LIMITS OF NOT LESS THAN THOSE DEFINED IN ABOVE IN ITEM C.1.A, NAMES YOU AS ADDITIONAL INSURED AND HAS A PROVISION TO PROVIDE A 10 DAY WRITTEN NOTICE OF CANCELLATION, OR

3.    IF AT ANY TIME OF ANY "ACCIDENT", "LOSS", CLAIM OR "SUIT" INVOLVING A "LEASED AUTO", YOU CANNOT PROVIDE US WITH SUCH EVIDENCE OF INSURANCE AS DESCRIBED ABOVE IN C.1.A AND OR C.2., FOR THAT "LEASED AUTO", TH[E]N THIS POLICY SHALL BE VOID AND AFFORD NO COVERAGE AS RESPECTS EITHER THAT "LEASED AUTO" OR THAT "ACCIDENT", "LOSS", CLAIM, OR "SUIT".

The second policy issued by Great Assurance to Jett Rent to Own was policy No. EXC 5-38-08-62, which provided excess coverage for the underlying policy No. CAP 5-38-08-61. The excess policy provided that a lessee or rentee is not an insured.

Great American has now moved for summary judgment. That motion is granted. The unambiguous language of policy No. CAP 5-38-08-61 provides coverage for a lessee in section B.4 of the Leasing or Rental Concerns Contingent Coverage unless the lessee has insurance in place. In this instance, Haskins had insurance coverage in place. Therefore, she had no liability insurance coverage under policy No. CAP 5-38-08-61. Policy No. EXC 5-38-08-62, the excess liability policy,

4

expressly excluded a lessee or rentee from coverage. Therefore, Haskins had no coverage under that policy.

Green argues, "Arkansas courts have determined that as a fundamental principle of insurance law, under a standard automobile policy, primary liability is generally placed on the insurer of the owner of the automobile involved and the policy providing the non-ownership coverage is secondary." Green cites *Shelter Mut. Ins. Co. v. Williams*, 69 Ark. App. 35, 9 S.W.3d 545 (2000); and *State Farm Fire & Cas. Co. v. Amos*, 32 Ark. App. 164, 798 S.W.2d 440 (1990). In *Shelter Mut. Ins. Co. v. Williams*, an insured of Shelter was a passenger in another person's automobile, insured by State Farm, at the time of the accident. State Farm paid $100,000 in liability benefits and $25,000 in underinsured motorist coverage to the estate of the decedent. The estate then made a claim for underinsured motorist benefits against Shelter, which defended on the ground that its policy provided that with respect to injury to an insured while in an automobile not owned by the named insured, the coverage under Shelter's policy would be excess over any other similar insurance available to the insured as primary insurance. The estate sought to stack the two underinsured motorist limits, but the Arkansas Court of Appeals held that the "other insurance" provision precluded stacking of the two underinsured motorist coverages. Likewise, in *State Farm Fire & Cas. Co. v. Amos*, the court held that State Farm's "other insurance" clause precluded stacking of uninsured motorist coverage.

Here, the issue of stacking would arise only if Great American's policies potentially provided coverage. They do not. Policy No. CAP 5-38-08-61 excludes coverage for a lessee who has liability insurance with the minimum limits required by Arkansas law. It is undisputed that Haskins had such insurance. Therefore, policy No. CAP 5-38-08-61 provides no coverage for her liability. Policy No.

EXC 5-38-08-62 expressly excludes any lessee or rentee.  Therefore, it does not provide coverage for Haskins's liability.

Finally, Green invokes the "other insurance" clause of policy No. CAP 5-38-08-61.  That clause provides, in pertinent part:

> For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

That provision of the policy applies when that policy, as well as some other policy, potentially provides coverage.  Here, that policy does not potentially provide coverage, so the "other insurance" clause never comes into effect.

The undisputed facts show that Jett Rent to Own was found not to be negligent.  Diane Haskins was found to be negligent, but the two policies issued by Great American to Jett Rent to Own do not provide coverage for Haskins.  There is no genuine issue of material fact.  Great American is entitled to judgment as a matter of law.

IT IS SO ORDERED this 24th day of June, 2008.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE